RECEIVED
JUN 20 2016
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| ANTHONY CHENEVERT, Plaintiff | CIVIL ACTION NO. 1:15-CV-02715 |
| VERSUS | CHIEF JUDGE DRELL |
| D G LOUISIANA, LLC, Defendant | MAGISTRATE JUDGE PEREZ-MONTES |

## REPORT AND RECOMMENDATION

Before the Court is a Motion to Remand (Doc. 7) filed by Plaintiff, Anthony Chenevert ("Chenevert"). The question presented by the Motion is whether Chenevert's damages exceed the Court's jurisdictional threshold. Chenevert claims he "stipulated" to damages of less than $75,000 when he filed this lawsuit in state court, and subsequent events have not usurped that stipulation. Defendant, D G Louisiana, LLC ("DGL"), argues that Chenevert's discovery responses and medical records establish Chenevert's damages will likely exceed $75,000.

Although a close question, the Motion to Remand should be denied. Chenevert averred, but did not bindingly stipulate, to damages below the jurisdictional threshold. And the evidence establishes that Chenevert's damages will, more likely than not, exceed $75,000.00.

I. **Background**

On September 16, 2015, Chenevert filed this lawsuit in the Twelfth Judicial District Court in Avoyelles Parish, Louisiana. Chenevert alleges he fell and was injured in the Dollar General Store in Hessmer, Louisiana on June 14, 2015.

1

In the second paragraph of the Petition for Damages, Chenevert states that "the amount in controversy does not exceed $75,000.00, exclusive of interest and cost (sic)." (Id.). On October 16, 2015, DGL filed an Answer to the Petition, agreeing that "any damages alleged [do] not exceed $75,000." (Doc. 1-3, p. 1). Discovery began.

On October 28, 2015, in response to discovery requests, Chenevert forwarded medical records from Dr. Dixie Guillot-Clement to DGL. Dr. Guillot-Clement described Chenevert's accident as follows:

> [Chenevert] was walking in the store, pulling the buggy with his left hand behind him. He had just reached for a gallon of milk in the cooler, started to walk forward (sic) then slipped on a cracked egg in the store. He fell completely backward and hit his [right] face and head on a cooler. He felt dazed and dizzy for a few minutes. He fell onto the ground, landing on the [right] hip and [right] elbow. [Right] jaw pain and [right] cheek numbness immediate onset.

(Doc. 10-1, p. 16).

Dr. Guillot-Clement saw Chenevert six times between June 15, 2015 and October 12, 2015. Dr. Guillot-Clement indicated Chenevert suffered from a number of significant medical issues, including: (1) a possible coccyx ("tailbone") bruise or fracture; (2) facial numbness, difficulty with verbal expression, syncope (fainting or passing out), and numbness of the left hand and fingers, all of which constitute "stroke-like symptoms" that "could be related to head trauma"; (3) right jaw pain; (4) right hip pain; (5) right elbow pain; (6) a loose tooth with facial swelling; and (7) right lower back and buttocks pain. (See generally Doc. 10-1). Chenevert also reported anxiety, crying episodes, essentially constant pain, difficulty and inability to work, difficulty standing and walking, and difficulty sleeping.

On June 25, 2015, Chenevert told Dr. Guillot-Clement he choked while eating because his jaw pain inhibits chewing. (Id., p. 14). Chenevert claims he was treated at an emergency room for that incident. During this visit, Dr. Guillot-Clement noted "symptoms/manifestations of an acute CVA (cerebrovascular accident)," a possible "subdural hematoma causing [left]-sided paralysis," and a possible "ischemic CVA." (Id., p, 14). Dr. Guillot-Clement referred Chenevert for an MRI, and placed him on pain medication.

On July 9, 2015, Dr. Guillot-Clement indicated abnormal MRI results with "subtle fluid collection on right likely from head trauma." (Id., p. 12). Chenevert was apparently referred for a neurosurgical evaluation "due to sudden onset of [left] arm paralysis." (Id.).

On August 10, 2015, Dr. Guillot-Clement noted that Chenevert's "MRI of the brain with contrast was read as normal," but that she still felt Chenevert had "stroke-like symptoms that could be related to head trauma." (Id., p. 11). Dr. Guillot-Clement recommended further neurosurgical evaluation, but noted Chenevert had no transportation to the facility.

Dr. Guillot-Clement first noted the potential coccyx bruise or fracture during Chenevert's September 9, 2015 visit. However, during this fifth visit and Chenevert's sixth visit on October 12, 2015, Dr. Guillot-Clement made no notations regarding Chenevert's neurological complaints.

II. <u>Law and Analysis</u>

A. <u>Standards governing the Motion to Remand.</u>

A federal court's jurisdiction is limited to areas authorized by the United States Constitution and acts of Congress. See <u>Scarlott v. Nissan N. Am., Inc.</u>, 771 F.3d 883, 887 (5th Cir. 2014). Remand is required "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c).

A federal court has "diversity jurisdiction" where the amount-in-controversy exceeds $75,000.00, exclusive of interest and costs, and where complete diversity exists between the parties. See 28 U.S.C. § 1332(a). The removing party bears the burden of establishing diversity jurisdiction. See <u>Mumfrey v. CVS Pharmacy, Inc.</u>, 719 F.3d 392, 397 (5th Cir. 2013). "Any ambiguities are construed against removal and in favor of remand to state court." <u>Id.</u>

Louisiana law forbids plaintiffs from specifying the monetary value of damages. <u>See</u> La. Code Civ. P. art. 893. Accordingly, "the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000." <u>Gebbia v. Wal-Mart Stores, Inc.</u>, 233 F.3d 880, 882 (5th Cir. 2000). "A removing defendant can meet its burden of demonstrating the amount in controversy by showing that the amount is 'facially apparent' from the plaintiffs' pleadings alone, or by submitting summary-judgment-type evidence." <u>Robertson v. Exxon Mobil Corp.</u>, 814 F.3d 236, 240 (5th Cir. 2015). However, "[t]he required "demonstration concerns what the plaintiff is claiming (and thus the amount in controversy between the parties), not whether the plaintiff is likely to win or be awarded everything he

4

seeks." Id. (quoting Berniard v. Dow Chem. Co., 481 Fed.Appx. 859, 862 (5th Cir. 2010)). Moreover, if the removing defendant carries its burden, remand is still warranted if the plaintiff can establish, to a "legal certainty," that damages do not exceed $75,000. See De Aguilar v. Boeing Co., 47 F.3d 1404, 1411 (5th Cir. 1995).

  B. **Chenevert's "anti-removal" averment was not a binding stipulation, confession, or waiver, and therefore, did not "prevent" removal.**

Under La. Code Civ. P. art. 893(A)(1), "if a specific amount of damages is necessary to establish . . . the lack of jurisdiction of federal courts due to insufficiency of damages . . . a general allegation that the claim exceeds or is less than the requisite amount is required." However, "rather than irrevocably binding a plaintiff to his amount-in-controversy allegations, an allegation made under Article 893(A)(1) may be disregarded if the defendant can show by a preponderance of the evidence that the claim is for more than the jurisdictional amount." In re 1994 Exxon Chem. Fire, 558 F.3d 378, 388 (5th Cir. 2009) (and cases cited therein).

A Louisiana plaintiff may only "prevent" removal by filing "a binding stipulation or affidavit" in state court renouncing the right to recover damages in excess of $75,000.00. See De Aguilar, 47 F.3d at 1412. Stated otherwise, "[b]ecause Louisiana plaintiffs are not limited to recovery of the damages listed in their pleadings, a plaintiff must make a judicial confession by affirmatively waiving the right to accept a judgment in excess of $75,000 for his pre-removal state court pleadings and stipulations to bind him." Griffin v. Georgia Gulf Lake Charles, LLC, 562 F.Supp.2d 775, 779 (W.D. La. 2008).

5

Here, Chenevert made no stipulation, judicial confession, or affirmative waiver in state court. Rather, Chenevert made a general "anti-removal" allegation. The allegation was "presumptively correct" when made. Id. at 778. But the averment did not irrevocably limit Chenevert's recovery so as to "prevent" removal. See De Aguilar, 47 F.3d at 1412.

### C. DGL established, by a preponderance of the evidence, that Chenevert's damages exceed $75,000.

DGL does not argue that the jurisdictional threshold is "facially apparent." Thus, DGL must "must produce evidence that establishes that the actual amount in controversy exceeds" $75,000. De Aguilar, 47 F.3d at 1412. In deciding whether DGL has met its burden, the Court may consider references to general damages awards for similar injuries, as well as Chenevert's discovery responses. See, e.g., Stine v. Dolgencorp Inc., CIV A 07-0858, 2007 WL 2711015, at *1 (W.D. La. Sept. 13, 2007) (noting a defendant's citations to damage awards in cases involving similar injuries); Elmer v. Northland Ins. Co., CIV.A. 13-2804, 2013 WL 3356881, at *3 (E.D. La. July 3, 2013) (citing 28 U.S.C. § 1446(c)(3)(A)) ("[T]he Notice of Removal was timely filed . . . because it was filed within 30 days of Defendants' receipt of discovery responses from Plaintiff regarding the amount of damages . . . ."). For several reasons, the Court finds that DGL has narrowly carried its burden.

First, Chenevert asserted – in response to an interrogatory and therefore, under oath – that the value of his claims exceeds $50,000. (Doc. 10-1, p. 5). In his Petition, Chenevert did not expressly request a jury trial. Chenevert may have

6

responded this way to preserve his right to a jury trial under La. Code. Civ. Proc. Art. 1732(1)(A).[1]

While not controlling, this response is certainly instructive as to the amount in controversy. See Brown v. Richard, CIV. A. 00-1982, 2000 WL 1653835, at *4 (E.D. La. Nov. 2, 2000) (noting that a jury demand "can be a [single, non-decisive] factor in determining whether the amount in controversy requirement for federal jurisdiction is satisfied"); accord Wilson v. Hochheim Prairie Cas. Ins. Co., 13-CV-3125, 2014 WL 508520, at *2 (W.D. La. Feb. 6, 2014). And as DGL correctly notes, the discovery response places Chenevert in the tenuous position of seeking more than $50,000, but less than $75,000. Chenevert bears no initial burden to disprove jurisdiction. But there is no evidence from Chenevert or otherwise indicating that his damages fall specifically between those figures.

Second, Chenevert incurred limited damages for medical expenses and lost wages. Although neither party briefed the issue, discovery responses indicate Chenevert seeks "$200-$300" in lost wages for a week's work and $1,270.54 in medical and pharmacy bills. (Doc. 10-1, p. 2). Chenevert admits there are additional medical bills for his treatment at Avoyelles Hospital, in amounts unknown. (Id., pp. 2-3). Of course, these damages fall well short of the jurisdictional threshold. But the Court considers them a likely part of any recovery Chenevert may obtain.

Third, DGL submits evidence indicating Chenevert's injuries – and the likely general damages therefor – are potentially significant. Chenevert seeks damages for:

---

[1] To obtain a jury trial in a Louisiana court, at least $50,000.00 must be at issue. La. Code Civ. P. art. 1732(1)(a).

7

"(1) past, present, and future physical pain and suffering, (2) past, present, and future mental pain and suffering, (3) past, present, and future medical expenses, (4) lost wages, past, present, and future; and (5) loss of enjoyment of life/hedonic damages." (Doc. 1-2, p. 2). These boilerplate categories of damages alone are uninstructive. But the limited evidence before the Court indicates that Chenevert's injuries may include a possible bone fracture; numerous "stroke-like" neurological symptoms (including numbness, fainting episodes, and difficulty speaking); a possible loosened tooth; and a litany of "soft-tissue" injuries. The medical records also indicate Chenevert may stand to recover damages for emotional distress and "hedonic damages," as he reported anxiety, crying episodes, and difficulty sleeping, all purportedly related to his post-fall pain.

DGL does little to quantify Chenevert's potential general damages. But the Court may consider comparable general and special damages awards in resolving a motion to remand. See, e.g., Chandler v. Ruston Louisiana Hosp. Co. LLC, 3:14CV121, 2014 WL 1096365, at *3 (W.D. La. Mar. 19, 2014) ("General and special damages of the kind claimed by Plaintiff, when combined, typically exceed the jurisdictional threshold."); Wolf v. Balfour Beatty Rail, Inc., CIV.A. 08-309, 2008 WL 1819931, at *2 (W.D. La. Apr. 22, 2008) ("The plaintiff's past and future expenses, when combined with a possible award for general damages, establish that the amount in controversy more likely than not exceeded $75,000 at the time of removal.").

General damages for a fractured coccyx alone likely exceed the jurisdictional threshold. See Shows v. Shoney's, Inc., 98-1254 (La.App. 1 Cir. 7/29/99); 738 So.2d

724, 740 (upholding a $300,000 general damages award for a fractured coccyx incurred when a plaintiff fell in a restaurant where "[t]his injury has produced a substantial amount of pain and discomfort for which [plaintiff] has undergone physical therapy and numerous epidural steroid injections . . . . [and where] her low back condition will likely be a life-long problem that could worsen with time"); Carter v. Baham, 95-2126 (La.App. 4 Cir. 10/09/96, 12); 683 So.2d 299, 306 (upholding a jury verdict of $50,000 for past pain and suffering and $250,000 for future pain and suffering for a fractured coccyx, fracture fibula, and ten percent disability). The same is true of Chenevert's "stroke-like" symptoms. See, e.g., Ezzell v. Miranne, 11-228 (La.App. 5 Cir. 12/28/11, 20); 84 So.3d 641, 654 (holding that "the lowest reasonable amount that the jury could have awarded for future pain and suffering is $75,000" to a plaintiff suffering impermanent headaches, "slurred speech, slow thought processes, decreased word finding ability and impaired memory" after being punched on the right brow).

These general damages could increase if Chenevert establishes the fall caused the loose tooth and other soft-tissue injuries of which he complained. And Chenevert's medical records evidence some chance of recovering additional damages for emotional distress and loss of enjoyment of life.

On the limited record before the Court, the amount-in-controversy is a close question. But Chenevert's discovery response seeking at least $50,000, combined with the evidence of Chenevert's likely recovery of special and general damages,

satisfies the Court's jurisdictional threshold by a preponderance of the evidence. Chenevert's requested damages will, more likely than not, exceed $75,000.

### D. Chenevert has not established, to a legal certainty, that his damages do not exceed $75,000.

Finally, in the Motion to Remand (Doc. 7-1, p. 5), Chenevert offers to file an affidavit stating his damages do not exceed the jurisdictional threshold. However, post-removal events – including stipulations, affidavits, and certainly statements in pleadings – "generally do not divest the court of diversity jurisdiction." See Gebbia, 233 F.3d at 883; accord Griffin v. Georgia Gulf Lake Charles, LLC, 562 F.Supp.2d 775, 780 (W.D. La. 2008) ("The Fifth Circuit allows plaintiffs to clarify ambiguity in their petition with after-filed affidavits, however a timely but inadequate stipulation cannot be effectively revised, after removal, by such an affidavit."). Thus Chenevert has not established "to a legal certainty" that his damages do not exceed $75,000.

## III. Conclusion

DGL's removal may have been "protective" in nature – made as soon as the jurisdictional threshold was in view, rather than certain, to avoid the 30-day removal window under 28 U.S.C. § 1446(b)(3). This Court disfavors protective removals. They are inefficient and unnecessary, because the 30-day removal window is only triggered by evidence which makes the amount-in-controversy "unequivocally clear and certain." Bosky v. Kroger Texas, LP, 288 F.3d 208, 211 (5th Cir. 2002).

Protective or not, however, DGL's removal is supported by evidence establishing Chenevert's damages – more likely than not – exceed $75,000. And

10

Chenevert cannot establish to a legal certainty that his damages do not exceed $75,000. Remand is therefore unwarranted.

IT IS HEREBY RECOMMENDED that Plaintiff's Motion to Remand (Doc. 7) be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in Alexandria, Louisiana, this 20 day of June, 2016.

JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE